```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION

DEBRA VILLAREAL,                §
                                §
          Plaintiff,             §
                                §
v.                              §    CIVIL ACTION NO. H-04-2481
                                §
DUKE ENERGY CORPORATION         §
a/k/a DUKE ENERGY,              §
                                §
          Defendant.            §
```

MEMORANDUM AND ORDER

Pending is Defendant Duke Energy Corporation a/k/a Duke Energy's Motion for Summary Judgment (Document No. 20). After carefully considering the motion, memorandum of authorities, response, reply, surresponse, and the applicable law, the Court concludes as follows:

I. Background

Plaintiff Debra Villareal ("Plaintiff") brings this action against her former employer, Duke Energy Corporation a/k/a Duke Energy ("Defendant"), after she was discharged for violating the Defendant's Code of Business Ethics (the "Code") because she failed to report a colleague's falsehood about the reason she was absent from work.[1]  Plaintiff denies that she violated the Code and

---

[1] The Code provides that employees are to behave ethically and tell the truth and requires employees to report any suspected unethical behavior to management. Document No. 27 ex. 5. In a Section entitled "Reporting a Violation of the Code," the Code

alleges that she was fired because of her sex (female) and her national origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

Plaintiff was employed by Defendant as a human resources associate ("HR associate"), where it was her responsibility to provide administrative support to five recruiters in the human resources department.  Document No. 21 ex. A at 39-41.  The recruiters and HR associates all reported to the Human Resources Manager for Staffing, Michael Landrum ("Landrum").  Id. at 41-42; ex. B.

According to Plaintiff, sometime in the middle of November 2002, she went to lunch with fellow HR associate Paola Tenorio

---

provides:  "As employees of Duke Energy, we all have a responsibility to report violations of this code.  To report a violation:

- First talk to your supervisor.
- If you aren't comfortable talking to your supervisor, or if you've talked to your supervisor and haven't received a satisfactory response, talk to your supervisor's manager, your human resources representative, your business unit compliance manager or the corporate compliance officer.
- If that doesn't work, or if you feel more comfortable doing so, call the EthicsLine."

Id.  The next paragraph provides contact information for the EthicsLine and states that employees can use this reporting system (1) anonymously to report suspected unethical conduct; or (2) to ask questions to resolve ethical dilemmas within the organization without fear of retribution.  Id.  Plaintiff testified that, as an employee of the human resources department, she was familiar with Defendant's policies and had completed training on the Code.  Document No. 21 ex. A at 43, 53.

2

("Tenorio").  Id. ex. A at 67; ex. A-8.  While at lunch, Tenorio told Plaintiff that she and her husband wanted to take a trip to Canada, but she did not have any vacation days left.  Id. ex. A at 67-69.  In early December, Tenorio asked Plaintiff to help her create an excuse for why she would be absent a few days to go to Canada.  Plaintiff states that she told Tenorio she did not want to be involved and the conversation ended.  Id. ex. A at 67-70; ex. A-8.

A few days later, on Friday, December 6th, during their lunch break Plaintiff went Christmas shopping with Tenorio and recruiter Marta Guerrero ("Guerrero").  Id. ex. A-8.  Plaintiff states that on their return to work from the mall, Tenorio received a telephone call reporting that there had been a family emergency and that she needed to leave Houston.  Id.  When they returned to work, Guerrero told their supervisor, Landrum, that Tenorio had a family emergency and went home.  Id. ex. B.  Shortly thereafter, Landrum received a voice message from Tenorio reiterating what Guerrero had told him.  Later that evening, Tenorio left another message stating that she needed to accompany her mother to Calgary, but she would be back in the office the following Monday.  Id.

According to Plaintiff, when she arrived to work on Monday, December 9th, she learned that Tenorio was out of the office because of an alleged death in the family.  Id. ex. A at 70. Plaintiff admitted that she "had a funny feeling it was not true"

3

and suspected that Tenorio had lied about the reason for her absence, but she did not report her suspicions to Landrum. Id. When Landrum spoke to Tenorio on Tuesday, December 10th, Tenorio told him that her aunt had been murdered and that she would be absent from work that day. Id. ex. B.  When Tenorio returned to work on Wednesday, December 11th, she told Plaintiff and Guerrero that she had lied about the family emergency and there had been no death in the family. Id. ex. A at 70.  According to Plaintiff, she urged Tenorio to tell the truth, but Tenorio refused. Id. ex. A at 71.  Plaintiff testified that "I gave [Tenorio] a chance to fess up, and she didn't." Id. ex. A at 73.

The following week, on December 17, 2002, Plaintiff visited with Rick Gilleland ("Gilleland"), a Caucasian male and a recruiter in the human resources group, during their lunch break.  Document No. 21 ex. A at 73; ex. D.  According to Gilleland, Plaintiff asked if he could keep a secret.  Plaintiff could not remember that detail or other surrounding circumstances regarding their conversation, but both agree that she then told him that Tenorio had lied about the reason she was absent from work because there had been no family emergency. Id. ex. D ¶¶ 3-4.  Gilleland considered Tenorio's conduct to be unethical and a violation of Defendant's Code of Business Ethics, so he reported Plaintiff's

comments to his supervisor Landrum that same day.[2]  Id. ¶ 5. Plaintiff does not dispute the details of this conversation, but she claims that Gilleland acted as her supervisor, and that by speaking to him about Tenorio, she fulfilled her duty under the Code to report a co-worker's unethical conduct to a supervisor. Document No. 22 at 8.

Based on Gilleland's report, Defendant began an investigation of the situation and learned that there had been no violent deaths in Calgary during the pertinent time period.  Document No. 21 ex. B; ex. C at 15-16.  After the holidays, Defendant removed Tenorio from service pending further investigation by Mark Short ("Short"), Defendant's human resources consultant.  Short met with Plaintiff, Tenorio, and Guerrero, all of whom provided written statements. Id. ex. C. at 16.  Based on the investigation, Short determined that all three employees had violated the Code--Tenorio had lied and falsified Company records by falsely recording her time sheets, and Plaintiff and Guerrero had played a role in the falsification of Company records and had failed to report a co-worker's deceit. Id.; Document No. 27 ex. 4 at 2.  Short determined that "[b]ased on [Plaintiff's written] statement, she missed two opportunities to report unethical behavior and she did not," and he recommended to

---

[2] According to Gilleland, "[Plaintiff] and I both reported to Michael Landrum.  I was not [Plaintiff's] supervisor, nor did I have any authority over her."  Id. ex. D ¶ 6.  Plaintiff admits that Landrum was her immediate supervisor.  Id. ex. A at 56.

management that Plaintiff be terminated.  Document No. 21 ex. C at 85.  Defendant then gave Plaintiff, Tenorio, and Guerrero the opportunity to resign, which they did, with resignations effective January 17, 2003.  Id. ex. C at 16.

Plaintiff claims that Defendant discriminated against her because she and Gilleland, a white male, engaged in the same activity of reporting Tenorio's misconduct, yet she was forced to resign and Gilleland was not.  Document No. 22 at 3.  Plaintiff also claims that Kelly Perkowski ("Perkowski"), a white female employee at Duke Energy Merchants, was treated more favorably than Plaintiff because Perkowski was not disciplined although she knew of Tenorio's misconduct but failed to report it.  Id. at 7.  Defendant moves for summary judgment on Plaintiff's claims, asserting that: (1) Plaintiff cannot establish a prima facie case that employees outside her protected class were treated more favorably under nearly identical circumstances; and (2) even if Plaintiff makes out a prima facie case, she cannot raise a fact issue that Defendant's legitimate business reason is a mere pretext for intentional discrimination.[3]

---

[3] Although Defendant did not make a jurisdictional challenge, on summary judgment it contends that Plaintiff's EEOC charge, which arrived by fax after 5:00 p.m. on the filing deadline, was not timely filed.  Because Defendant is entitled to summary judgment on the merits, the Court assumes without deciding that the charge was timely filed.

## II. Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

### III.  Discussion

Title VII proscribes an employer from discriminating against any individual because of that individual's sex and national origin.  42 U.S.C. § 2000e-2(a)(1).  The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff."  Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004).  Intentional discrimination can be established through either direct or circumstantial evidence.  Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001).  Because Plaintiff presents no direct evidence of discrimination, her claim is analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  Id.  Under this framework, a plaintiff must first create a presumption of intentional

discrimination by establishing a prima facie case of discrimination. Id.

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

A.  Plaintiff's Prima Facie Case

Plaintiff argues both that (1) she did not violate the Code; and (2) as for whatever conduct she *did* engage in, similarly situated individuals outside her protected class engaged in the same conduct but were not disciplined as she was. Document No. 22 at 2. In discriminatory discharge cases based on an employee's alleged violation of a "work rule," plaintiffs "may establish a

prima facie case by showing 'either that [they] did not violate the rule or that, if [they] did, [employees outside the protected class] who engaged in similar acts were not punished similarly." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980)); *see also* Simmons v. Rothe Dev., Inc., 952 F. Supp. 486, 490 (S.D. Tex. 1997), *aff'd*, 132 F.3d 1456 (5th Cir. 1997).  To state a prima facie case based on disparate discipline, the employee "must show that [noncomplaining] employees were treated differently under circumstances 'nearly identical' to [theirs]." Mayberry, 55 F.3d at 1090 (quoting Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)); *see also* Onwunumagha v. Station Operators Inc., No. H-04-3316, 2005 WL 2230154, at *4 (S.D. Tex. Sept. 13, 2005) (Rosenthal, J.).

Plaintiff first argues that she did not violate the work rule for which she was disciplined because she reported Tenorio's misconduct to her alleged supervisor Gilleland in accordance with the Code.  Document No. 22 at 6-7.  The parties agree that if Plaintiff reported Tenorio's misconduct to her supervisor, then she would have acted in conformance with the Code.  However, the parties dispute whether Gilleland was acting as Plaintiff's supervisor on their lunch break when she confided in him the information about Tenorio's absence from work. Plaintiff relies on the following evidence: (1) Defendant's initial response to a

10

discovery interrogatory, in which it identified Gilleland as a "Former HR Manager" instead of a recruiter; and (2) Plaintiff's own deposition testimony that recruiters like Gilleland functioned as the HR associates' immediate supervisors when Landrum was out of the office.[4]  See Document No. 21 ex. A at 52; Document No. 27 ex. 1.

Plaintiff testified that "the only time I would report to Marta [Guerrero] or any of the other recruiters is when Michael Landrum was not in the office." Document No. 21 ex. A at 52.  She stated that the recruiters were a resource to go to in Landrum's absence, so if she had a problem pertaining to work, she could approach them.  Id.  Plaintiff admitted, however, that Gilleland and the other recruiters did not hire her, never gave her a performance evaluation, and never disciplined her in any way.  Id.  She described the relationship between HR associates and recruiters as such:

> A:   We support them; but when Michael Landrum's not there, we have to report to them. . . . [S]ay, for instance, I've got to leave because my son is ill or something . . . I have to go tell them "You know what?  I've got to leave." . . .

---

[4] Defendant argues that the identification of Gilleland as a former HR manager was a clerical error that was later corrected. Document No. 24 at 1-2.  It is uncontroverted that Defendant did serve Plaintiff with an amended answer to the interrogatory, identifying Gilleland as a Recruiting Consultant I and not as an HR Manager.  See FED. R. CIV. P. 26(e)(2).

> Q: Okay. So that--that's really, I mean, if nothing else, out of courtesy. If you support somebody and you're going to leave, you're going to let that person know. Is that--
>
> A: Exactly.

Id. at 101-02.

Defendant responds that Gilleland never acted as Plaintiff's supervisor and presents the following evidence: (1) deposition testimony from Short, the HR consultant, that Gilleland was a recruiter, not a manager, and that both Gilleland and Plaintiff reported to Landrum; (2) Landrum's averment that Plaintiff "did not report to Rick Gilleland, and I never told her that she was to report to Rick, or any of the other recruiters in my absence"; (3) Gilleland's deposition testimony that both he and Plaintiff reported to Landrum, that he was not Plaintiff's supervisor, that he was never a supervisor of anyone at Duke, that no one ever directly reported to him at Duke, and that he never had any authority over Plaintiff; and (4) Plaintiff's testimony admitting that she and the HR associates reported to Landrum, that her "reporting" to the recruiters during Landrum's absence was more of a "courtesy," and that Gilleland did not hire her, never gave her a performance evaluation, and never participated in any disciplinary actions. Document No. 21 ex. C at 9, 13, 18-19; ex. B ¶ 7; ex. A at 41-42, 75; Document No. 24 ex. G at 5,7.

12

The uncontroverted summary judgment record establishes that Plaintiff provided a "support" role to the recruiters by helping them schedule interviews and complete paperwork, that Plaintiff as an HR associate *supported* Gilleland, who was one of the recruiters, and that her providing administrative support to Gilleland did not require that she *report* to him as a subordinate reports to a supervisor. It is also uncontroverted that both Plaintiff *and* Gilleland were direct reports to Landrum. Gilleland did not administer Plaintiff's performance reviews, discipline her, dictate her pay or hours, or otherwise assert a managerial influence over the details of her job. Plaintiff's testimony that Gilleland and the other recruiters acted as her supervisor when Landrum was out of the office is therefore merely a conclusory statement on her part that has no independent factual basis in the summary judgment evidence. Regardless, even assuming there were a factual predicate for Plaintiff's conclusory statement, it is uncontroverted that Landrum was *in* the office on each of the days when Plaintiff first suspected that Tenorio had lied (December 9 or 10), when Tenorio after returning to the office from Canada told Plaintiff that she had lied (December 12), and the next week when Plaintiff during a lunch break confided in Gilleland about Tenorio's misconduct (December 17). Document No. 21 ex. A at 71-72; ex. B. There is no summary judgment evidence whatever--even allowing for Plaintiff's conclusory statement--that Gilleland was acting as Plaintiff's

13

supervisor on all of these days when her actual, admitted supervisor Landrum was *in* the office, and hence, no evidence that her conversation with Gilleland constituted a "report" in conformance with the Code.

Plaintiff also attempts to establish a prima facie case by showing that employees outside her protected class acted similarly in "nearly identical" circumstances and received more favorable treatment. *See* Mayberry, 55 F.3d at 1090.  Plaintiff argues that two Caucasian employees, Gilleland and Kelly Perkowski, were treated more favorably than she after engaging in similar conduct. However, Plaintiff must also show that these employees acted in circumstances nearly identical to hers--a showing that Plaintiff is unable to meet.  First, as to Gilleland, the timing and setting of his report was markedly different from Plaintiff's.  Gilleland reported Tenorio's misconduct to his immediate supervisor the same day he learned of it. Document No. 21 ex. B at 11; ex. C at 15-17; ex. D.  Even assuming Plaintiff properly reported Tenorio's misconduct by confiding in Gilleland, this "report" did not occur until more than one week after Plaintiff first suspected that Tenorio had fabricated the reason for her absence, and not until at least six days after she knew for certain that Tenorio had lied. During her deposition, Plaintiff conceded that if Gilleland reported Tenorio's unethical behavior the same day he learned of it, he was not treated more favorably than she was. *See* id. ex. A

14

at 94 ("If he reported it that exact same day, was he treated more fairly than I was?  No.")  Moreover, the setting of the "reports" were strikingly different.  Plaintiff disclosed Tenorio's misconduct to Gilleland during their lunch break, when as Plaintiff testified, "Rick was complaining about [Tenorio]," and, according to Gilleland's uncontroverted recollection, Plaintiff first asked Gilleland if he could keep a "secret" about their colleague.  *See* Document No. 21 ex. A at 75; ex. D.  Gilleland, however, reported Tenorio's misconduct to his supervisor immediately upon returning to work that day, and later that afternoon he made a formal report to the HR consultant, Mark Short.  *See* id. ex. D.

Plaintiff also cannot compare herself to Perkowski because Perkowski's situation was not "nearly identical" to hers.  First, there is no evidence rebutting Perkowski's testimony that she did not know of Tenorio's falsehood until *after* Tenorio had resigned.  Document No. 21 ex. E at 11-12.  Furthermore, Perkowski did not work in human resources with Plaintiff, Tenorio, and Gilleland, nor did she report to a supervisor in that department.  *See* id. at 16-17.  Plaintiff emphasizes Perkowski's deposition testimony, where she was asked to speculate if she would have reported Tenorio's falsehood to someone in human resources had she known about it.  Defendant timely objected to the question as calling for speculation, *see* id. at 17, and the objection is SUSTAINED.  Nonetheless, in the deposition Perkowski went on to respond that

15

she did not know how to answer the question given that Tenorio and she did not work in the same unit and Tenorio did not report to her. *See* id. In no way has Plaintiff shown that Perkowski--who is not shown to have even known about Tenorio's deceit at the time--acted under nearly identical circumstances to those of Plaintiff and received more favorable treatment. Because Plaintiff cannot show that either Perkowski or Gilleland was treated more favorably under circumstances nearly identical to hers, or, alternatively, that she did not violate the work rule, Plaintiff has failed to establish a prima facie case of discrimination through disparate discipline.

> B.  Defendant's Legitimate, Non-Discriminatory Explanation and Plaintiff's Evidence of Intentional Discrimination

Plaintiff also failed to rebut Defendant's proffered legitimate, non-discriminatory reason for its decision, namely, that Defendant had a reasonable, good faith basis to believe that Plaintiff had violated the work rule. Fifth Circuit precedent holds that "a mistaken but good-faith belief that an employee has violated the employer's rules is sufficient to rebut the McDonnell Douglas inference that the employee was discharged for impermissible reasons." Corley v. Jackson Police Dep't, 639 F.2d 1296, 1298 (5th Cir. 1981); Onwunumagha, 2005 WL 2230154 at *7. There is no summary judgment evidence to raise so much as a genuine

issue of fact that Defendant's declared reason for Plaintiff's discharge was pretextual.

The summary judgment record shows that Defendant undertook a thorough investigation of Plaintiff's involvement in Tenorio's misconduct--including conducting interviews with the involved parties and requesting written statements from each of them--and through that process determined that Plaintiff had violated Defendant's Code of Business Ethics by failing to report a colleague's deceit. Further, the summary judgment record demonstrates that Defendant appointed Landrum as Plaintiff's supervisor--not Gilleland--and Defendant did not regard Plaintiff's belated lunch-break disclosure to Gilleland to constitute a legitimate report in conformance with the Code. In sum, Plaintiff has failed to produce any evidence that Defendant's articulated reason is false, much less a mere pretext for intentional discrimination. Although Plaintiff may *believe* that her discharge was motivated by discriminatory animus, Plaintiff has failed to present evidence to raise so much as a fact issue that her violation of Defendant's Code of Business Ethics was not the only reason that Defendant asked her to resign. Because the summary judgment evidence does not permit an inference of sex or national origin discrimination, Defendant's motion for summary judgment will be granted.

IV.  <u>Order</u>

For the reasons set forth, it is hereby

ORDERED that Defendant Duke Energy Corporation a/k/a Duke Energy's Motion for Summary Judgment Record (Document No. 20) is GRANTED.  Plaintiff's Title VII claim is DISMISSED on the merits.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 28th day of December, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE